**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | *    CRIMINAL NO.  LO-19-0449 |
| JOSHUA REINHARDT TREEM, | * |
| | *    ██████████████ |
| Defendant. | * |
| | * |
| | * |

\*\*\*\*\*\*\*

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT TREEM'S MOTION TO EXCLUDE PRIVILEGED EVIDENCE**

The United States of America, by and through its undersigned attorneys, hereby submits this response in opposition to defendant Joshua Reinhardt Treem's Motion to Exclude Privileged Evidence (the "Motion"), filed under seal on June 9, 2021 (ECF 219).

## I.    FACTUAL BACKGROUND

On June 13, 2019, during the investigation of this matter, the Government obtained warrants to search and seize evidence from the law offices of defendants Kenneth Ravenell and Joshua Treem.  The affidavit of Special Agent Scott Riha, Internal Revenue Service Criminal Investigation, submitted in support of the warrants (the "Search Warrant Affidavit") is attached hereto as Exhibit 1.  The Search Warrant Affidavit summarizes the investigation of Ravenell, Treem, and Gordon up until the point of the warrant application.

As described in the Search Warrant Affidavit, the investigation of the drug trafficking organization ("DTO") of R.B. revealed information about Ravenell's involvement in the illegal activities of the DTO, which included money laundering and obstruction of justice.  After Ravenell became a target of the investigation, in 2014, the Government obtained a warrant to search his law office.  Later, Treem began representing Ravenell in the criminal investigation.  While R.B.'s

1

criminal case was pending, Treem contacted R.B.'s then-counsel to ███████████████ ███████████████████████████ and to request access to a production of Jencks materials that the Government made in R.B.'s case. ███████████████████████

████████ Treem also knew that gaining access to the Jencks production in R.B.'s case would require a violation of the discovery agreement in that case.  The Jencks production revealed incriminating information about Ravenell that the Government learned through its ongoing investigation.  R.B.'s then-counsel agreed to allow Treem to review the Jencks production.  Treem accessed and reviewed the Jencks production multiple times, at least once with Ravenell accompanying him, and even took possession of the Jencks production for a period of time before returning it to R.B.'s then-counsel.  Ravenell compiled a list of exculpatory statements about himself, disputing information reflected in R.B.'s Jencks production, which was later captured in a type-written document titled "KWR's Combined Notes."   Treem subsequently sought to schedule an in-person meeting with R.B.

█████████████████████████████████████████████████████████████

█████████████████████████████ When arrangements were made for Treem and his investigator, defendant Sean Gordon, to visit R.B. at the Towers Jail in Phoenix, Arizona, ████ ██████████████████████████████████████ Treem and Gordon traveled to Arizona to meet with R.B. on September 9, 2017.  Treem presented KWR's Combined Notes to R.B., explaining that Ravenell asked him to meet with R.B. and provided a list of things to ask R.B.  Treem placed the document in front of R.B. and asked him to read it, ████████████ █████████████████████████████████████████████████████████████ ████████████████ R.B. stated that he knew what Ravenell wanted and knew Ravenell's "formula."  R.B. stated further, "whatever Kenny needs that's fine, that's not a problem. Like we

can go through this whole questioning and then we're going to do the song and dance, that's not a problem, alright period."  In addressing KWR's Combined Notes, R.B. read aloud and expressed agreement with many of the statements in the document.  Among the false exculpatory statements were that R.B. kept Ravenell unaware of his drug and money laundering activities because R.B. knew that Ravenell would not approve, that R.B. never told Ravenell that he used LOC Marketing to launder money, that R.B. did not give Ravenell millions of dollars in cash, and other statements. R.B. asked Treem whether Ravenell would help him get back money that R.B. stated that he invested in a casino in Maryland and said that he needed his money, to which Treem and Gordon each responded that they understood.  Treem also discussed potential ways that R.B. could get his money back and discussed Ravenell's former law partners.  Treem asked if he could return the following day for another meeting, and R.B. agreed.

On September 10, 2017, Treem and Gordon returned to Towers Jail to meet with R.B. again.  Treem asked R.B. to sign KWR's Combined Notes "just to show Ken that [R.B.] went over it[.]"  R.B. did not, however, sign the document at that time.  What R.B. did was to explain that the information he provided on the previous day is what he would testify to if called to testify but that "the real situation" was that Ravenell knew about R.B.'s drug operation and money laundering and that R.B. paid Ravenell millions of dollars in cash.  After R.B. provided additional incriminating information about Ravenell, Treem stated that he credited the information as accurate and truthful and noted that this information was different from what R.B. stated the previous day.  Treem asked R.B. to sign KWR's Combined Notes again, "Can you sign that for me that you saw it?", and, while he and Gordon were alone, R.B. confirmed, "so he just want me to sign saying I seen it?", to which Gordon responded, "Yeah, you saw it."  R.B. then signed the document.

Months later, Treem sent a letter to the U.S. District Judge presiding in R.B.'s case that falsely described his meetings with R.B. in September 2017.  A copy of the letter was attached to the Search Warrant Affidavit.  Among the misrepresentations was that, on September 10, 2017, R.B. acknowledged the accuracy of facts that were exculpatory to Ravenell by signing the document presented to him and stated that he would not provide information or testimony that would "falsely inculpate" Ravenell.  After describing voice messages and text messages sent to Gordon after the meetings in September 2017, the letter accused R.B. of extortion and blackmail, and stated that Treem and Ravenell wanted to make a record "should [Ravenell] be charged and should [R.B.] appear as a government witness."

The warrant to search Treem's law offices, the law offices of Brown, Goldstein & Levy LLP ("BGL"), authorized the seizure of various forms of evidence of violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1519 (Falsification of Records), and 18 U.S.C. § 1512(c) (Obstruction of Official Proceeding).

The Court appointed a Special Master to conduct a filter review of documents and information seized from BGL's offices for whether attorney-client or attorney work product privileges applied and whether the crime-fraud exception applied to particular materials.  The Court entered Orders in Case No. 19-MJ-2155 establishing a filter review process that permitted participation by BGL.  Ravenell later intervened in order to participate in the procedure.  BGL and Ravenell were permitted to make objections to any privilege determinations made by the Special Master to be reviewed and considered both by the Special Master and by the Court.  Ultimately, after considering and addressing BGL's and Ravenell's objections, the Court ordered disclosure of various materials to the Government based on findings that the materials were either not privileged or that the crime-fraud exception applied.  *See, e.g.*, Order dated January 24, 2020 in

Case No. 19-MJ-2155 (attached as Exhibit 5).  Among the materials disclosed to the Government were copies of KWR's Combined Notes (attached as Exhibit 2), a document titled "Affidavit of Sean Gordon" (attached as Exhibit 3), and handwritten notes made by Treem in connection with his meetings with R.B. (excerpted as Exhibit 4).  The Affidavit of Sean Gordon was signed by Gordon on September 14, 2017, and provided false factual support for misrepresentations later made in Treem's letter to the U.S. District Judge.  Treem's handwritten notes reflected his knowledge that the false statements made in the letter were indeed false.

Following the disclosure of the foregoing materials, on December 17, 2020, the Grand Jury returned a Superseding Indictment in this case, charging Ravenell, Treem, and Gordon with violations of 18 U.S.C. §§ 371, 1519, and 1512(c), in addition to preexisting charges against Ravenell.  On March 30, 2021, the defendants filed several pretrial motions, including a Motion to Dismiss Superseding Indictment Based Upon Improper Recordings of Defense Witness Interview and Alternatively to Suppress Recordings (ECF 174).  The Court entered an Order directing the Government to file responses on or before May 21, 2021, and the Government filed its Omnibus Response on that date (ECF 214).  On June 9, 2021, the defendants filed several replies, and defendant Treem filed under seal a Motion to Exclude Privileged Evidence (ECF 219, the "Motion").  The Motion repeats and recasts several arguments the defendant made in ECF 174.

For the reasons that following, the Court should deny both Motions.

## II.     LEGAL STANDARD

"The work product privilege protects an attorney's work done in preparation for litigation." *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) (citing *In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir.1994)). "The party claiming work product protection has the burden of

establishing entitlement to the protection." *State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, Civ.

No. 4:15-2745-RMG, 2016 WL 4051271, at *2 (D.S.C. July 25, 2016) (citing *In re Martin*

*Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988)).

> The privilege encompasses both "fact" work product and "opinion"
> work product. Fact work product, which consists of documents
> prepared by an attorney that do not contain the attorney's mental
> impressions, "can be discovered upon a showing of both a
> substantial need and an inability to secure the substantial equivalent
> of the materials by alternate means without undue hardship." *In re*
> *Grand Jury Proceedings,* 33 F.3d at 348; *see also In re John*
> *Doe,* 662 F.2d 1073, 1076 (4th Cir.1981) (defining fact work
> product). Opinion work product, which does contain the fruit of an
> attorney's mental processes, is "more scrupulously protected as it
> represents the actual thoughts and impressions of the attorney." *In*
> *re Grand Jury Proceedings,* 33 F.3d at 348. Because the work
> product privilege protects not just the attorney-client relationship
> but the interests of attorneys to their own work product, [*Hickman*
> *v. Taylor,* 329 U.S. 495, 511 (1947)], the attorney, as well as the
> client, hold the privilege.

*In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d at 250.

"Work-product immunity is waived if the client, the client's lawyer, or another authorized

agent of the client . . . discloses the material to third persons in circumstances in which there is a

significant likelihood that an adversary or potential adversary in anticipated litigation will obtain

it." *Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 772 (D. Md. 2008); *see also*

*Johnson v. Baltimore Police Dep't*, Civ. No. ELH-19-698, 2021 WL 1985014, at *2 (D. Md. May

18, 2021) ("[D]isclosure to a third party amounts to waiver if it has substantially increased the

opportunities for potential adversaries to obtain the information.") (citing citing *In re Doe*, 662

F.2d 1073, 1081 (4th Cir. 1981)).  For instance, discussions and documents shared between an

attorney and a non-party witness are not protected by attorney work product doctrine.  *Id.* at *3.[1]

However, the privilege is not waived if the disclosure of work product is made to a party with

whom the client shares a "common interest in litigation."  *In re Grand Jury Subpoena: Under Seal*,

415 F.3d 333, 341 (4th Cir. 2005); *see also In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe

89-129*, 902 F.2d 244, 248–49 (4th Cir. 1990) (applying "common interest rule" to attorney work

product doctrine).  The common interest or joint defense rule requires "that the client's and third

party's 'legal interests be fully allied[,]'" and the communication must be "made in the course of

and in furtherance of the joint legal effort." *Elat v. Ngoubene*, Civ. No. PWG-11-2931, 2013 WL

4478190, at *2-3 (D. Md. Aug. 16, 2013) (citations omitted).   "Conclusory claims that

a common interest in litigation exists are not sufficient to establish the joint defense privilege in

the absence of a showing that the parties were pursuing a common legal strategy." *United States

v. Elbaz*, 396 F. Supp. 3d 583, 598 (D. Md. 2019).

 The attorney work product privilege may also be "lost . . . when a client gives information

to an attorney for the purpose of committing or furthering a crime or fraud."  *In re Grand Jury

Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d at 251.  The crime-fraud exception requires "a *prima

facie* showing that the privileged communications fall within the exception."  *Id.*

   In satisfying this *prima facie* standard, proof either by a
preponderance or beyond a reasonable doubt of the crime or fraud

---

[1] *See also State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, Civ. No. 4:15-2745-RMG, 2016 WL
4051271, at *2 (D.S.C. July 25, 2016) ("Attorney-client privilege and work product protection
are ordinarily waived by a voluntary disclosure of protected materials to a third party."); *Animal
Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 131 (D.D.C. 2019)
("[D]isclosure of attorney-client or work product confidences to third parties waives the
protection of the relevant privileges.") (quoting *In re Lindsey*, 158 F.3d 1263, 1282 (D.C.Cir.
1998)); *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D.
Cal. 2009) ("A voluntary waiver . . . 'occurs when a party discloses [protected] information to a
third party who is not bound [to maintain its confidence], or otherwise shows disregard for the
[protection] by making the information public.'") (quoting *Bittaker v. Woodford*, 331 F.3d 715,
719, 720 n. 4, 722 n. 6 (9th Cir.2003)).

is not required. *See Union Camp Corp. v. Lewis,* 385 F.2d 143, 145 (4th Cir.1967) ("[The Government] was not at this [*prima facie*] stage of the proceedings required to prove the crime or fraud in order to secure the evidence."). Rather, the proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted."[ ] *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1220 (4th Cir.1976) (citations omitted). Further, "[w]hile such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding." *Id.*

*In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d at 251 (footnote omitted).

"[T]he party invoking the crime-fraud exception must make a *prima facie* showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* Fact work product "may be discovered upon *prima facie* evidence of a crime or fraud as to the client only and thus even when the attorney is unaware of the crime or fraud." *Id.* at 252. As to opinion work product, a *prima facie* case that the attorney knows of the crime or fraud is required for the crime-fraud exception to apply. *Id.*

## III.   ARGUMENT

### A.  The Video Recordings Should Not Be Excluded.

####   1.   The video recordings of the meetings between Treem, Gordon, and R.B. on September 9, 2017, and September 10, 2017, are not privileged attorney work product.

Treem cannot claim work product privilege for the September 2017 video recordings. First, neither Treem nor any agent of Treem produced the recordings. ████████████ ████████████████████████████████████████ Second, insofar as Treem now claims work product privilege for statements, questions, and responses made by him during the meetings with R.B., that privilege is waived. Everything said during the meetings was

only captured in the recordings because Treem and Gordon freely disclosed them to R.B. "Communications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made." *United States v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003)  The attorney work product doctrine is waived by disclosure to a third party, unless that party is a party to a joint defense agreement or at least shares a common interest in litigation with the attorney's client. *See In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005).  Such disclosures substantially increase opportunities for potential adversaries to obtain the information. *Johnson*, 2021 WL 1985014, at *2-3.  Treem has not asserted that Ravenell and R.B. were parties to a joint defense agreement or shared a common interest in litigation, and even if he did, such an assertion would fall short of what the law requires to find a joint defense agreement or common interest.[2]  As Treem was fully aware in September 2017, R.B. was not a party to a joint defense and did not share a common interest with Ravenell. At the time of the meeting, R.B. had already pled guilty and had been sentenced. ██████████

████████████████████████████████████████████████████████████████

_____

[2] The law on joint defense agreements and the common interest doctrine was described recently by Judge Chuang in *United States v. Elbaz*:

> The joint defense privilege, also called the common interest privilege, is an extension of the attorney-client privilege. *See Aramony*, 88 F.3d at 1392. To invoke the privilege, the party must show that there is a shared "common interest about a legal matter." *Id*. The parties to the common interest are not required to reduce their agreement to writing, so long as there are indicators of a "joint strategy" sufficient to establish that the parties are "clearly collaborating in advance of litigation." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 284–85, 287 (4th Cir. 2010). Conclusory claims that a common interest in litigation exists are not sufficient to establish the joint defense privilege in the absence of a showing that the parties were pursuing a common legal strategy. *See In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 341 (4th Cir. 2005); Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 124-25 (4th Cir. 1994). The privilege protects documents shared among the parties after the common interest was formed, but not before. *Hunton & Williams*, 590 F.3d at 285.

396 F.Supp.3d 583, 598 (D.Md. 2019).

████████████████████████████████████████████████████████

████████████████████████████████

The defense states in the Motion that, if Treem had produced a memorandum documenting the meeting with R.B., he could claim work product protection for it.  Mot. at 9.  Any such memorandum would have been Treem's work product, and (setting aside whether the crime-fraud exception applies) the memorandum would have been protected if Treem kept it private and did not disclose it to a third party.  But work product protection for a memorandum produced by Treem would not extend to the recordings he seeks to suppress because the recordings are not his work product at all and only captured questions and responses that he freely relayed to a third party, R.B.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

The defense relies principally upon a New Jersey state court case decided by an intermediate appellate court, *State v. Martinez*, 220 A.3d 498, 518-22 (N.J. Super. A.D. 2019), in which ████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████.  Although the court's decision was based on state law and not federal law,

the Government submits that the *Martinez* case was wrongly decided.  The court did not address

or consider whether any work product privilege was waived ████████████████████████

██████████████████████████████████████.  It is clear that federal law in this circuit

recognizes that work product immunity is waived by disclosure to uninterested third parties, *see,*

*e.g., Johnson,* 2021 WL 1985014, at *2-3 (citing *In re Doe,* 662 F.2d 1073), and therefore Treem

waived protection for any thoughts he revealed to R.B. during their meetings.  As the Fourth

Circuit explained in *In re Grand Jury Proceedings*:

> Therefore, the privilege is waived where the client intends that the attorney provide
> the information to others, and when any "significant part" of the communication is
> disclosed to others, the waiver applies not only to the particular communication
> between the client and the attorney, but also to the "substance of the
> communications" and the "details underlying the data" that was to be shared with
> others.

727 F.2d 1352, 1356 (4th Cir. 1984).  "[S]uch a disclosure not only waives the privilege as to the

specific information revealed, but also waives the privilege as to the subject matter of the

disclosure." *Hawkins v. Stables,* 148 F.3d 379, 384 n.4 (4th Cir. 1998).  Here, Ravenell provided

Treem with the "KWR Combined Notes," which formed the basis for the discussion Treem and

Gordon had with R.B.   Ravenell intended for Treem and Gordon to disclose KWR's Combined

Notes to R.B., as Treem explained to R.B.  *See* Superseding Indictment ¶ 19 ("so not surprising to

you **[RAVENELL]**'s given us a list of things we've got to ask you," referring to KWR's Combined

Notes).

The defense cites *United States v. Ebrahimi,* 137 F. Supp. 3d 886 (E.D.Va. 2015), and other

cases for the proposition that the Government is not permitted to interfere with a defense attorney's

access to potential witnesses or require a government agent be present for any meeting with

defense counsel.  But, here, Treem had full access to R.B. on two dates without any interference

from the Government.  Unlike the cases relied upon by the defense, ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████[3]

The Court should deny Treem's motion to suppress the video recordings.

**2. The Government's access to the video recordings of the September 2017 meetings and use of the recordings at trial is further justified by the crime-fraud exception.**

Even if the video recordings of the September 2017 meetings constituted Treem's work product (which they do not) and he did not waive protection through his disclosures to R.B. (which he did), the crime-fraud exception to the work product doctrine would permit the government to access the recordings and use them at trial.

The Search Warrant Affidavit outlines the following facts, preceding the meetings between Treem and R.B. in September 2017:

- Investigation of R.B.'s drug trafficking organization ("DTO") revealed information showing Ravenell's participation in the illegal activities of the DTO, including obstruction of justice. (¶ 8)

- Treem began representing Ravenell during the government's investigation of Ravenell.  (¶ 11)

- Treem and Ravenell sought and obtained from R.B.'s counsel access to a Jencks discovery production made in the prosecution of R.B., in violation of the discovery agreement in R.B.'s case, which revealed incriminating information about Ravenell. (¶¶ 16-17)

---

[3] Even if the recording of the September 2017 meetings is deemed to have improperly interfered with Ravenell's counsel's access to R.B., Treem does not have standing to seek a remedy for any such interference on Ravenell's behalf.  And, even if he did have standing, suppression of the recordings is not the proper remedy.  In *Ebrahimi*, the court's order was to advise the witness of her or his right to grant or deny defense counsel's request for an interview without any restriction or involvement by the Government.  *See* 137 F. Supp. 3d at 889–90.

Treem and Gordon traveled to the Towers Jail in Phoenix, Arizona to meet with R.B. on September 9, 2017, and September 10, 2017, during which the following occurred:

- Treem presented a list of false exculpatory statements prepared by Ravenell after reviewing R.B.'s Jencks production, titled "KWR's Combined Notes." (¶¶ 20, 24)

- On the first day, R.B. affirmed the false exculpatory statements, after telling Treem that he knew what Ravenell wanted and knew is "formula," and ". . . we're going to do the song and dance, that's not a problem, alright period." (¶¶ 21, 24)

- On the second day, R.B. explained that the information he provided on the first day would be what he would testify to if called to testify but the truth was that Ravenell had full knowledge of R.B.'s drug operation and money laundering and accepted large sums of cash from him, which Treem stated that he credited as the truth. (¶ 32)

- Treem asked R.B. to sign "KWR's Combined Notes" as confirmation that he "saw" the document. (¶ 34)

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

The following occurred after the September 2017 meetings:

- Treem and Ravenell were in frequent contact in September 2017 and between November 2017 and February 2018. (¶ 36)

- Treem sent a letter to the U.S. District Judge presiding in R.B.'s case that falsely described meetings with R.B. in September 2017, stating that, on the second day, R.B. acknowledged the accuracy of facts that were exculpatory to Ravenell by signing the document presented to him and stated that he would not provide information or testimony that would "falsely inculpate" Ravenell. (¶ 39)

- The letter went on to accuse R.B. of attempted to extort Ravenell by threatening to "go to the government" if money was not paid by Ravenell and stated that Treem and Ravenell agreed to make a record "should [Ravenell] be charged and should [R.B.] appear as a government witness." (¶¶ 40-41)

The foregoing establishes a prima facie case that Treem and Ravenell planned and were engaged in a criminal and fraudulent scheme to obstruct justice and the recordings of Treem's

meetings with R.B. in September 2017 bear a close relationship to the scheme. Therefore, even if the work product doctrine applied to the recordings (which it does not), the crime-fraud exception would justify the government's access to the recordings and use of the recordings at trial.

The defense's Motion raises a number of factual disputes regarding the criminal scheme (such as Treem's motive and intent in sending the letter to the U.S. District Judge) that will likely be raised at trial but have no bearing on whether the crime-fraud exception applies. All that is required to apply the exception is a prima facie showing—not proof beyond a reasonable doubt or even by a preponderance. *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). Among the defense's factual disputes is whether the statements listed in "KWR's Combined Notes" are false and whether Treem understood them to be false. But, during the meeting with R.B., Treem stated that he credited R.B.'s incriminating statements about Ravenell on the second day as "accurate and truthful" and acknowledged that these statements were "different than" what R.B. said on the first day. Search Warrant Affidavit at 15, 16. Thus, Treem's own statements reflect his understanding that statements in "KWR's Combined Notes" were false and Treem's letter to the U.S. District Judge describing what transpired during the meetings with R.B. was also false. Treem also now disputes whether the letter would be admissible in a future trial, but the letter itself states that it is presented as a record should R.B. appear as a government witness against Ravenell. The government's showing clearly satisfies the prima facie standard necessary to apply the crime-fraud exception.

### B. KWR's Combined Notes Should Not Be Excluded.

The document "KWR's Combined Notes" is not attorney work product, and any work product privilege was waived by disclosing the document and its contents to R.B. and lost under the crime-fraud exception.

14

The work product doctrine does not apply to KWR's Combined Notes because the document is not Treem's work product. Treem indicated multiple times during the meetings with R.B. that Ravenell produced the document and intended for it to be presented to R.B., a third party. Thus, even if the document was privileged prior to be disclosed to R.B., that privilege was waived by the disclosure made during Treem's meeting with R.B. on September 9, 2017.

The Court previously addressed KWR's Combined Notes as a "████████ document in its January 24, 2020 Order, stating that the document was "██████████████████ ██████████████" and "███████████████████." Order at 5-6 (*citing Diaz v. Devlin*, 327 F.R.D. 26, 30 (D. Mass. 2018)). The defense argues that Treem "adopted" KWR's Combined Notes as his work product and made his own notes on the document. But, again, any work product privilege applicable to the notes Treem made were waived when he presented the document to R.B. for his signature.

The January 24, 2020 Order goes on to state, "█████████████████████████ ███████████████████████████████████████████████ ████████████." *Id.* at 6. The crime-fraud exception applies because, as explained supra, a prima facie showing has been made, through the search warrant affidavit alone, that Treem and Ravenell planned and were engaged in a criminal and fraudulent scheme to obstruct justice. "KWR's Combined Notes" bears a close relationship to the scheme. It was designed for R.B. to adopt or affirm falsely by signing the document. Treem was specifically aware that R.B. denied statements in the document at the time he directed R.B. to sign it on September 10, 2017, but directed him to sign it under the false pretense that his signature would only represent that he "saw" it. Referring to "KWR's Combined Notes" in the February 8, 2018, letter to the U.S. District Judge, Treem states falsely that, on September 10, 2017, R.B. "acknowledged the accuracy of the

individual statements and signed the document." Contrary to what the defense states in the Motion, it is clear that Treem was more than "complicit" but was a willful participant in the criminal and fraudulent scheme. Thus, as this Court found in its January 24, 2020 Order, any work product privilege that might otherwise apply to "KWR's Combined Notes" is lost under the crime-fraud exception.

### C. Treem's Handwritten Notes Should Not Be Excluded.

The defense next challenges handwritten notes made by Treem for which the Special Master and this Court applied the crime-fraud exception and directed disclosure to the Government. Disclosure of handwritten notes about the September 2017 meetings to the Government was justified by the crime-fraud exception. In its January 24, 2020 Order, the Court addressed these materials as " ███████ documents and found that a prima facie showing had been made that the documents "██████████████████████████████████

██████████████████████████████████████████████."

Order at 6. Specifically, the Government has shown that Treem and Ravenell planned and were engaged in a criminal and fraudulent scheme to obstruct justice and that Treem's handwritten notes about his September 2017 meetings with R.B. bear a close relationship to the scheme. These notes reflect Treem's thoughts and mental impressions about what occurred during the meetings with R.B. and, for this precise reason, evidence of Treem's criminal state of mind. For example, the notes reflect Treem's acknowledgment that R.B. told him that Ravenell knew about R.B.'s drug trafficking and money laundering activities and accepted cash from R.B. and others in the DTO, and that R.B.'s account on September 10, 2017, was "different" from his statements on September 9, 2017. Notwithstanding multiple handwritten notes to the contrary, Treem stated falsely in the February 8, 2018, letter to the U.S. District Judge that R.B. was consistent on both dates in

exculpating Ravenell.  The notes are proof of Treem's knowing participation in the criminal and fraudulent scheme and are therefore subject to the crime-fraud exception.

### D.  The Affidavit of Sean Gordon Should Not Be Excluded.

The defense finally challenges the document titled "Affidavit of Sean Gordon," which this Court has already found not to be protected attorney work product and to which the Court has applied the crime-fraud exception.  The Affidavit of Sean Gordon is not attorney work product, and any applicable work product privilege is lost under the crime-fraud exception.  In its January 24, 2020 Order, the Court addressed this document as " █████████ describing the document as █████████████████████████████████████████ " and " █████████████████ ."  Order at 5 (quoting Diaz v. Devlin, 327 F.R.D. 26, 30 (D. Mass. 2018)). The Order then states, " ████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████ "  *Id.*  The Government has shown that Treem and Ravenell planned and were engaged in a criminal and fraudulent scheme to obstruct justice, and the Affidavit of Sean Gordon bears a close relationship to the scheme.  The Affidavit of Sean Gordon serves as a false account and false evidence of what occurred during the September 2017 meetings between Treem, Gordon, and R.B.

As specifically alleged in the Superseding Indictment, the Affidavit of Sean Gordon included the following false statements about the September 2017 meetings:

> 6.  [R.B.] read each of the entries [referring to KWR's Combined Notes as "Exhibit 1"], numbered 1-53, out loud and acknowledged the truthfulness and accuracy of each one separately and individually.

> 7.  At no time did [R.B.] express any hesitancy, disapproval, or disagreement with the statements or make any changes.

>    8.  The [check] markings on the Exhibit were made by Mr. Treem
>    subsequent to [R.B.] acknowledging the accuracy of the entries, to
>    record that [R.B.] had read all the entries.   All of the other
>    handwriting was made by Mr. Treem prior to [R.B.] reading and
>    acknowledging the accuracy of entries 1 through 53.
>
>    9.  We [Gordon and Treem] met with [R.B.] again on September 10,
>    2017.  During our visit we asked him to review Exhibit 1 and, if he
>    had no changes to make, to sign and date the statement, which he
>    did in my presence.

In this way, the Affidavit of Sean Gordon, which was executed by Gordon within days of the meetings with R.B., serves as false evidentiary support for misrepresentations Treem subsequently made in the February 8, 2018, letter to the U.S. District Judge.  In that letter, Treem states falsely that R.B. was consistent on both September 9, 2017, and September 10, 2017, in exculpating Ravenell and that he acknowledged the accuracy of KWR's Combined Notes in signing the document.  As explained supra, Treem was well aware that R.B. denied statements made in KWR's Combined Notes on the second day, that he credited R.B.'s statements inculpating Ravenell as "accurate and truthful," and that he directed R.B. to sign the document anyway as confirmation that R.B. "saw" it—not that he acknowledged the truth of the false exculpatory statements listed in the document.  The Affidavit of Sean Gordon falsely supports Treem's obstructive misrepresentations.  Thus, as this Court found in its January 24, 2020 Order, any work product privilege that might otherwise apply to the Affidavit of Sean Gordon is lost under the crime-fraud exception.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Defendant Treem's Motion to Exclude

Privileged Evidence.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____/s/_____
Leo J. Wise
Matthew J. Maddox
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served on counsel of record via electronic

mail.

_____/s/_____
Matthew J. Maddox
Assistant United States Attorney
